FIRST DIVISION 

 NOVEMBER 4, 2002

No. 1-00-3541

THE CITY OF CHICAGO and THE COUNTY OF COOK, ) Appeal from the

) Circuit Court

Plaintiffs-Appellants, ) of Cook County

) v. ) 

)

BERETTA U.S.A. CORPORATION; )

PIETRO BERETTA
 Sp. A.; BROWNING ARMS ) 

COMPANY.; BRYCO ARMS INC.;
 )

COLT'S MANUFACTURING COMPANY, )

INC.; DAVIS INDUSTRIES, INC.; GLOCK, )

INC.; GLOCK GMBH; HI-POINT FIREARMS; H&R )

1871, INC.; INTERNATIONAL ARMAMENT ) 

CORPORATION; CARL WALTHER GMBH; ) 

LORCIN ENGINEERING COMPANY, INC; )

KEL-TEC CNC INDUSTRIES, INC.; )

NAVEGAR, INC.; PHOENIX ARMS; RAVEN ARMS, )

INC.; SMITH & WESSON CORPORATION; ) 

STURM, RUGER AND COMPANY, INC; )

SUNDANCE INDUSTRIES, INC.; )

TAURUS INTERNATIONAL MANUFACTURING, )

INC.; FORJAS TAURUS, S.A.; B.L. )

JENNINGS, INC.; FABER BROTHERS, INC.; ) No. 98 CH 015596

RILEY'S, INC.; ABN SPORTS SUPPLY, INC., )

a/k/a ASHLAND SHOOTING SUPPLIES, INC.; )

UNIVERSAL FIREARMS, LTD.; B&H SPORTS, )

LTD.; BREIT & JOHNSON SPORTING GOODS, )

INC.; CHICAGO RIDGE GUN SHOP & RANGE, )

INC.; JOHN RIGGIO, JR.; ELIZABETH )

RIGGIO; JIM RIGGIO; GUN WORLD, INC.; )

MIDWEST SPORTING GOODS COMPANY; THE )

SPORTSMAN'S CENTER/ILLINOIS GUN WORKS, )

LTD.; SHORE GALLERIES, INC.; THE SPORTS )

AUTHORITY, INC.; and DONALD R. BELTRAME, ) The Honorable

) Stephen A. Schiller,

Defendants-Appellees. ) Judge Presiding.

JUSTICE COUSINS delivered the opinion of the court:

The City of Chicago (City) and the County of Cook (County) (collectively, plaintiffs) filed suit against 18 firearm manufacturers, 4 firearm distributors and 11 firearm dealers (collectively, defendants).  Plaintiffs' original complaint asserted one count for public nuisance and one count for negligent entrustment.  The negligent entrustment count was dismissed.  Plaintiffs' second amended complaint, 
inter
 
alia
, alleges that the defendants' marketing practices unreasonably facilitate the unlawful possession and use of firearms in Chicago, and that the defendants are liable for participating in the creation and maintenance of a public nuisance.  Following oral argument, the trial court's September 15, 2000, order granted defendants' motions to dismiss "pursuant to 735 ILCS 5/2-615 and/or 2-619."  Plaintiffs' second amended complaint was dismissed with prejudice. 
 The issue presented on review is whether the complaint properly pled a cause of action for public nuisance under Illinois law.

BACKGROUND

Plaintiffs filed suit against the defendants in November 1998.  Plaintiffs filed a first amended complaint in April 1999.  Defendants moved to dismiss plaintiffs' first amended complaint.  On February 10, 2000, the trial court dismissed count II (negligent entrustment) and reserved ruling on count I (public nuisance).  Following the dismissal of count I, plaintiffs moved for leave to file a second amended complaint to add data from the Bureau of Alcohol, Tobacco and Firearms (ATF).  

Specifically, plaintiffs' second amended complaint alleges:

   "35. Defendant dealers sell firearms to Chicago residents even when the purchasers' words and/or behavior indicate that they intend to possess or use the firearms illegally.

   36. Defendant dealers sell handguns that are designed and marketed to be carried as concealed weapons even though Illinois law prohibits carrying concealed weapons, and do not inquire of buyers whether they are authorized to carry concealed weapons nor warn them of the legal restrictions on carrying concealed weapons.

* * *

   38. Despite their knowledge that Chicago residents purchase guns outside the City of Chicago and then bring them back into the City, and their knowledge both of the harm done in Chicago and of Chicago's strict gun control ordinances, defendant firearms dealers make no meaningful effort to prevent or limit the traffic of firearms into Chicago, but instead choose to profit from such traffic.  They do not refuse to sell to Chicago residents and do not require proof that Chicago residents intend to maintain the firearms outside Chicago.  They do not notify the Chicago Police Department of sales to residents of Chicago.

   39. *** Defendant gun dealers consciously fail to take any action to prevent violations of law when Chicago residents and others make multiple purchases of guns, or otherwise purchase guns in a manner that would make it plainly foreseeable that the purchaser is not buying those weapons for himself, but instead for purposes of illegal resale.

* * *

   50. The defendant gun dealers' actions and omissions in selling firearms to Chicago residents that are illegal in the City of Chicago unreasonably facilitate violations of City ordinances, and contribute to physical harm, fear and inconvenience to Chicago residents, and are injurious to the public health and safety of Chicago residents.

* * *

   59. Defendant manufacturers and distributors knowingly oversupply or 'saturate the market' with their products in areas where gun control law are less restrictive, knowing that persons will illegally bring them into the jurisdictions where they are illegal and then possess or illegally resell them.  

* * *

   64. The defendant gun manufacturers and distributors distribute quantities of their firearms through low-end retailers such as pawn shops and gun stores that are known to be frequented by criminals and gang members.

* * *

   68. The defendant firearms manufacturers and distributors fail to supervise, regulate or set standards for dealers' conduct, instead relying on the mere fact that the dealers are licensed by the federal government.

* * *

   78. Defendant manufacturers design and advertise their guns to appeal to the significant market for illegal firearms, including to those who wish to use them for criminal purposes.

* * *

   85. Defendants intentionally and recklessly design, market, distribute and sell firearms to persons whom defendants should know will bring those firearms into Chicago, causing thousands of firearms to be possessed and used in Chicago illegally, which results in a higher level of crime, death and injuries to Chicago citizens, a higher level of fear, discomfort and inconvenience to the residents of Chicago, and increased costs to the plaintiffs to investigate and prosecute crimes caused by the illegal possession and sue of the firearms brought into Chicago.  Their conduct thereby causes a significant and unreasonable interference with the public health, safety, welfare, peace, comfort and convenience, and ability to be free from disturbance and reasonable apprehension of danger to person and property.

* * *

   93. The defendants' conduct is the direct and proximate cause of deaths and injuries to Chicago residents and a significant and unreasonable interference with public safety and health and the public's right to be free from disturbance and reasonable apprehension of danger to a person and property."

The City requests allocated monetary damages attributable to each defendant to compensate the City for the costs it bears as a result of the public nuisance, including costs of emergency medical response, police department programs, and the prosecution of gun control ordinance violations.  The County seeks compensation for the costs that it bears as a result of the defendants' conduct, including costs for treatment of victims of firearm violence
 and the costs to prosecute and defend the criminal misuse of a firearm.  The City and 
 County 
also seek punitive damages to "punish and deter conduct that intentionally and recklessly endangers the people of Chicago" and permanent injunctive relief to abate the public nuisance caused by the defendants.  

Defendants moved to dismiss the plaintiffs' second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2000)).
  The Sports Authority, Inc. (Sports Authority), a gun dealer, filed a separate motion to dismiss 
pursuant to section 2-619 (735 ILCS 5/2-619 (West 2000)).  
In its oral ruling on September 15, 2000, granting defendants' motions to dismiss plaintiffs' second amended complaint, the trial court stated:

   "With regard to the public nuisance count, to a large extent the plaintiffs rely on statistical data which really, even in statistical terms, defines only a portion of the universe of experience and participants in the experience with regard to hand guns and hand gun violence.

   At best, in terms of immediacy and proximity, both in terms of injury and causation, contrary to the situation that was presented in cases like 
Wilsonville
, which both parties made allusion to and relied upon in argument, they suggest facts in my opinion that a legislative body could take notice of and consider and which a court, given Illinois's aversion to statistical bases for cause of actions, for example, in the market share area that relates to product liability, not directly germane but in some way instructive, in the Supreme Court's holding in the Lilly case, which I still believe is good law.  This is not the basis that an Illinois court can *** use as essentially almost the sole basis for deciding whether individual parties *** are responsible for a public nuisance.

   I think the situation is somewhat distinct between the manufacturers and distributors and the individual dealers.  With regard to the dealers in particular, I would be remiss in stating that the allegations in the complaint with regard to the majority of the dealers assert[] serious allegations of fact which suggest evasion and violation of applicable law.  

* * *

   But consistent with the holding by the Illinois Supreme Court in 
Festival Theater
 [
sic
] and in numbers of cases, no showing has been made nor has an assertion even been made that applicable enforcement of criminal sanctions [has] been attempted and, if attempted, [has]
 been shown to be inadequate.  Accordingly, it's my decision that the complaint 
in
 
toto
 with regard to all three classes, manufacturers, distributors and dealers, is dismissed."  

The trial court's September 15, 2000, order granted defendants' motions to dismiss "pursuant to 735 ILCS 5/2-615 and/or 2-619."  Plaintiffs' second amended complaint was dismissed with prejudice.  Pursuant to Rule 304(a) (155 Ill. 2d R. 304(a)), the order was final and appealable.  Plaintiffs' joint notice of appeal seeks a review of the September 15, 2000, order dismissing count I (public nuisance) of plaintiffs' second amended complaint with prejudice and the order of February 10, 2000, which dismissed count II (negligent entrustment) of plaintiffs' first amended complaint.  However, the appellate briefs submitted by plaintiffs only address the dismissal of the public nuisance count of the second amended complaint, and the dismissal of the negligent entrustment count is not challenged on appeal.

On appeal, Sports Authority contends:  (1) plaintiffs' second amended complaint does not demonstrate how Sports Authority knew or should have known that any purchaser would use the guns for an unlawful purpose; (2) Sports Authority stopped selling guns in April 1999 and, therefore, the plaintiffs' claims are moot; and (3) the plaintiffs have waived any arguments in response to Sports Authority's section 2-619 motion by not addressing the issues raised in that motion or rebutting the accompanying affidavits in their opening brief here.  Before we begin our analysis of the public nuisance issue, we will address issues raised by Sports Authority.  

We disagree with Sports Authority's contention that the issues raised by the plaintiffs in its second amended complaint have been waived.  The second amended complaint related to all named defendants, including Sports Authority.  In its ruling, the trial court did not specifically refer to Sports Authority's separate motion.  Rather, the trial court opined that the situation was somewhat distinct between the manufacturers and distributors and individual dealers.  However, the trial court used the same basis to dismiss the complaint against all defendants.  Therefore, we will review the issue of whether plaintiffs stated a cause of action for public nuisance.

ANALYSIS

I. STANDARD OF REVIEW

A motion to dismiss a complaint pursuant to section 2-615 (735 ILCS 5/2-615 (West 2000)) attacks the legal sufficiency of the complaint by alleging defects on the face of the complaint.  
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 491, 713 N.E.2d 543 (1999).  In reviewing the sufficiency of a complaint, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that can be drawn from those facts. 
 
Bryson v. News America Publications, Inc.
, 174 Ill. 2d 77, 86, 672 N.E.2d 1207 (1996).  The court must determine whether the allegations of the complaint, when considered in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted.  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 490, 675 N.E.2d 584 (1996).
  A cause of action will not be dismissed on the pleadings unless it clearly appears that
 
no set of facts can be proved that will entitle the plaintiff to relief.  
Board of Directors of Bloomfield Club Recreation Ass'n v. The Hoffman Group, Inc.
, 186 Ill. 2d 419, 424, 712 N.E.2d 330 (1999).  "Pleadings are to be liberally construed, and a pleader is not required to set out his evidence but only the ultimate facts to be proved."  
Gilmore v. Stanmar, Inc.
, 261 Ill. App. 3d 651, 654, 633 N.E.2d 985 (1994).  The standard of review on appeal from an order granting a section 2-615 motion to dismiss is 
de
 
novo
.  
Weatherman
, 186 Ill. 2d at 491
. 

II. ELEMENTS OF PUBLIC NUISANCE

Illinois courts have adopted the Restatement (Second) of Torts definition of public nuisance.  
Young v. Bryco Arms
, 327 Ill. App. 3d 948, 958, 765 N.E.2d 1 (2001), citing
 
Wheat v. Freeman Coal Mining Corp.
, 23 Ill. App. 3d 14, 18, 319 N.E.2d 290 (1974).  "A public nuisance is an unreasonable interference with a right common to the general public."  Restatement (Second) of Torts §821B(1) (1979).  The existence of a public nuisance depends on the peculiar facts presented by each case.  
City of Chicago v. Commonwealth Edison Co.
, 24 Ill. App. 3d 624, 631-32, 321 N.E.2d 412 (1974).
  A sufficient pleading for a public nuisance cause of action consists of facts alleging a right common to the general public, a transgression of those rights by the defendant and resulting damages.  
Feder v. Perry Coal Co.
, 279 Ill. App. 314, 318 (1935).  The pleading requirements are not strenuous because "[t]he concept of common law public nuisance does elude precise definition." 

 
City of Chicago v. Festival Theatre Corp.
,
 91 Ill. 2d 295, 306
, 438 N.E.2d 159 (1982).

A. PUBLIC RIGHT

The first element that a plaintiff must allege in order to state a claim for public nuisance is the existence of "a right common to the general public."  
Commonwealth Edison Co.
, 24 Ill. App. 3d at 631. 
 Rights of the general public entitled to protection include the right to "'the public health, the public safety, the public peace, the public comfort or the public convenience.'"  
Young
, 327 Ill. App. 3d at 959, quoting Restatement (Second) of Torts §821B(2)(a) (1979). 

Here, plaintiffs allege: 

   "84. The residents of Chicago, who are also citizens of Cook County, have a common right to be free from conduct that creates an unreasonable jeopardy to the public's health, welfare and safety, and to be free from conduct that creates a disturbance and reasonable apprehension of danger to person and property.
  

   85. Defendants intentionally and recklessly design, market, distribute and sell firearms to persons whom defendants should know will bring those firearms into Chicago, causing thousands of firearms to be possessed and used in Chicago illegally, which results in a higher level of crime, death and injuries to Chicago citizens, a higher level of fear, discomfort and inconvenience to the residents of Chicago, and increased costs to the plaintiffs to investigate and prosecute crimes caused by the illegal possession and use of the firearms brought into Chicago.  Their conduct thereby causes a significant and unreasonable interference with the public health, safety, welfare, peace, comfort and convenience, and ability to be free from disturbance and reasonable apprehension of danger to person and property.

* * * 

  93. The defendants' conduct is the direct and proximate cause of deaths and injuries to Chicago residents and a significant and unreasonable interference with public safety and health and the public's right to be free from disturbance and reasonable apprehension of danger to a person and property."

In our view, plaintiffs' allegations sufficiently plead the right of the public to be free from unreasonable jeopardy to it's health, welfare and safety
 and reasonable apprehension of danger to person and property.
 

B. UNREASONABLE INTERFERENCE

 Defendants assert that plaintiffs failed to allege actionable negligent, intentional tortious or ultrahazardous activity by the manufacturers.  According to comment 
e
, section 821B of the Restatement (Second) of Torts, an unreasonable interference need not be negligent.  
Young
, 327 Ill. App. 3d at 960. 
 Rather, intentional misconduct by the defendants can also give rise to liability for public nuisance:

"'[T]he defendant is held liable for a public nuisance if his interference with the public right was intentional or
 
was unintentional and otherwise actionable under the principles controlling liability for negligent or reckless conduct or for abnormally dangerous activities. *** If the interference with the public right is intentional, it must also be unreasonable.'"  
Young
, 327 Ill. App. 3d at 960, quoting Restatement (Second) of Torts §821B, Comment 
e
 (1979).

The Restatement further defines what constitutes an "intentional" invasion as follows: 

     "'An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor 

   (a) acts for the purpose of causing it, or 

   (b) knows that it is resulting or is substantially certain to result from his conduct.'"
  
Young
, 327 Ill. App. 3d at 960,
 
quoting Restatement (Second) of Torts §825 (1979). 

The Restatement sets forth the following circumstances that may sustain a holding that an interference
 
with a public right is "unreasonable": 

     "(a) Whether the conduct involves significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or 

     (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or 

     (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect
 
upon the public right."  Restatement (Second) of Torts §821B(2) (1979). 

In the instant case, plaintiffs allege that defendants' conduct involves significant interference with public health and public safety and such conduct has caused plaintiffs permanent injury.  Specifically, plaintiffs allege that the firearm manufacturers and distributors design and market weapons targeting criminals; the firearm manufacturers and distributors
 distribute firearms through a market structure intentionally created by defendants by relying on dealers who encourage purchasers to illegally transport weapons to Chicago; the firearm manufacturers and distributors
 fail to regulate or discipline known irresponsible dealers; the firearm manufacturers and distributors
 flood the market in areas surrounding Chicago, knowing and foreseeing that the excess firearm supply would be taken to Chicago and possessed and used illegally; the dealers sell firearms to persons whom they know or have reason to believe will illegally transfer or resell those firearms
; the dealers
 sell handguns that are designed and marketed to be carried as concealed weapons even though Illinois law prohibits carrying concealed weapons and do not inquire of buyers whether they are authorized to carry concealed weapons nor warn them of the legal restrictions on carrying concealed weapons
; and all defendants intentionally create and maintain an underground market for handguns.  In our view, the complaint
 
sufficiently alleges that the defendants' actions are intentional.
  
The unreasonableness of a defendants' actions that lead to the determination of nuisance is a question of fact for the jury.  See 
Young
, 327 Ill. App. 3d at 960.  
 

Defendants set forth several reasons why their alleged conduct does not constitute an unreasonable interference with a public right.

1. No Liability for Criminal Misuse of Product

First, defendants rely on 
Martin v. Harrington & Richardson, Inc.
, 743 F.2d 1200 (7th Cir. 1984), 
Linton v. Smith & Wesson
, 127 Ill. App. 3d 676, 469 N.E.2d 339 (1984), and 
Riordan v. International Armament Corp.
, 132 Ill. App. 3d 642, 477 N.E.2d 1293 (1985),
 
to argue that Illinois law rejects the imposition of any tort liability, including public nuisance, on firearm manufacturers and distributors for the criminal misuse of their products by third parties.  However, those cases are distinguishable because neither 
Martin
, 
Linton
 nor 
Riordan
 involved public nuisance claims.  Similarly, we find the following strict liability and negligence cases cited by defendants inapposite:  
Miller v. Civil Constructors, Inc.
, 272 Ill. App. 3d 263, 651 N.E.2d 239 (1995), and 
Hamilton v. Beretta U.S.A. Corp.
, 96 N.Y.2d 222, 750 N.E.2d 1055, 727 N.Y.S. 7 (2001).

In 
Martin
, the plaintiffs alleged that manufacturing and selling handguns to the public was an ultrahazardous activity that gave rise to strict liability for any damage done by the guns.  
Martin
, 743 F.2d at 1201-02.  The court noted that Illinois law limited strict liability for the sale of a product to unreasonably dangerous, defective products.  
Martin
, 743 F.2d at
 
1204.  Since the handgun involved in the shooting posed an obvious danger that required no warning, the court found that it was not unreasonably dangerous.  There were also no allegations that the gun was defective.  
Martin
, 743 F.2d at 1202-03.  The court concluded that the plaintiffs had no grounds for recovery under the doctrine of 
strict
 
liability
 for engaging in ultrahazardous activities.  
Martin
, 743 F.2d at 1204.

In 
Linton
, the appellate court held that the defendant-manufacturer owed no duty to prevent the sale of its handguns to persons likely to cause harm to the public.  
Linton
, 127 Ill. App. 3d at 678-79.
  However, in that case, the plaintiff alleged that a gun manufacturer was liable for negligent and wilful and wanton distribution of the gun used to shoot the plaintiff.  
Linton
, 127 Ill. App. 3d at 677.
  The plaintiff claimed that the gun manufacturer had a duty to prevent the sale of its guns to persons who were likely to cause harm to the public.  
Linton
, 127 Ill. App. 3d at 678.  The court reasoned that the plaintiff made no allegations that defendant circumvented any of the state or local regulations
.  
Linton
, 127 Ill. App. 3d at 678.

Similarly, 
Riordan
 rejected a claim identical to the claim asserted in 
Linton
.  See 
Riordan
, 132 Ill. App. 3d at 646.  The plaintiffs in 
Riordan
 asserted that handgun manufacturers and distributors owed a duty to control the distribution of their products based upon allegations of negligent and wilful and wanton distribution.  The court, citing 
Linton
, found that a duty did not arise because criminal misuse
 
of the product was not a foreseeable consequence of sales to the general public.  
Riordan
 also rejected plaintiffs' claim that the defendants negligently failed to warn consumers of the danger of handguns and the illegality of carrying concealed weapons.  The court held that no duty to warn arose as the dangers of illegal handgun misuse were obvious and open conditions that a reasonable consumer would realize.
  
Following 
Martin
, the 
Riordan
 court also held that it was not the manufacture and sale of handguns that was ultrahazardous, but their use or misuse alleged in plaintiffs' complaints.  
Riordan
, 132 Ill. App. 3d at 649.  
In reasoning that the alleged design defects of size and concealability were not conditions that caused the handgun to fail to perform in a reasonably expected manner, the 
Riordan
 court held that the plaintiffs could not recover under strict liability for defective design.  
Riordan
, 132 Ill. App. 3d at 650-51.

Unlike the plaintiffs in 
Martin
, 
Linton
 and 
Riordan
, the plaintiffs here do not allege that defendants are liable under theories of negligence or strict liability.  Instead, their public nuisance claims allege defendants' intentional and unreasonable conduct. 
 

2. Public Nuisance Inapplicable to Lawful Acts

Defendants here also assert that a lawful act will not constitute a public nuisance.  However, common law public nuisance is "'not limited to those activities the legislature has declared [to be] public nuisances.'"  
Young
, 327 Ill. App. 3d at 967, quoting 
Festival Theatre
, 91 Ill. 2d at 303.  Other public nuisance cases have held that compliance with the law is not dispositive of whether a public nuisance exists, but merely serves as a "guideline" in determining whether an unreasonable interference has occurred.  
Young
, 327 Ill. App. 3d at 967, citing 
Commonwealth Edison
, 24 Ill. App. 3d at 632-33.  "'Handgun manufacturers, like the rest of us, can be held civilly liable for their conduct even if it falls within the framework and regulations of statutory law.'"  
Young
, 327 Ill. App. 3d at 967-68, quoting D. Kairys, 
The Governmental Handgun Cases and the Elements and Underlying Policies of Public Nuisance Law
, 32 Conn. L. Rev. 1175, 1182 (Summer 2000).  Moreover, plaintiffs here allege that the fostering of an underground handgun market is not lawful action.

It is certainly true that comprehensive legislation of a certain activity causes courts to exercise judicial restraint in declaring an activity to be a public nuisance if it complies with the regulations.  
Young
, 327 Ill. App. 3d at 968, citing Restatement (Second) Torts §821B, Comment
 f
 (1979).  "'However, there is generally no regulation of the quantity, frequency, or purpose of firearm purchases or sales nor is there any national registration of purchasers of firearms.  Multiple sales and even straw purchases are generally not unlawful and are not significantly regulated.'"  
Young
, 327 Ill. App. 3d at 967, quoting D. Kairys, 
The Governmental Handgun Cases and the Elements and Underlying Policies of Public Nuisance Law
, 32 Conn. L. Rev. 1175, 1183 (Summer 2000). 

The Ohio Supreme Court addressed a similar issue.  Relative to the defendants' contention in 
City of Cincinnati
 that the plaintiff's nuisance claim could not go forward because the distribution of firearms is highly regulated and covers legislatively authorized conduct, the Ohio Supreme Court stated:  "Even though there exists a comprehensive regulatory scheme involving manufacturing sales, and distribution of firearms, *** the law does not regulate the distribution practices alleged in the complaint."  
City of Cincinnati
, 95 Ohio St. 3d at 420, 768 N.E.2d at 1143.  

In the instant case, plaintiffs allege, 
inter
 
alia
, that defendants intentionally created and maintained an illegal underground gun market, thereby creating and carrying on a public nuisance.  Plaintiffs' second amended complaint asserts that defendants created and fostered an underground market by designing and marketing weapons for criminal use, by oversupplying the areas surrounding Chicago with handguns that are illegal to purchase or possess in Chicago, and
 by consciously failing to take any action to prevent violations of law when Chicago residents and others make multiple purchases of guns that make it plainly foreseeable that the purchaser is not buying those weapons for himself
.  Here, taking plaintiffs' allegations as true, defendants can be held liable for creating the alleged nuisance.  See 
City of Boston v. Smith and Wesson Corp.
, No. 19999-2590, slip op. at 15 
(Mass. Sup. Ct. July 13, 2000); 
City of Cincinnati
, 95 Ohio St. 3d at 418-20, 768 N.E.2d at 1141-43.

3. Public Nuisance Inapplicable to Lawful Distribution

In support of their assertion that public nuisance law does not apply to the lawful, commercial distribution of a product, defendants cite 
Bubalo v. Navegar, Inc
., No. 96 C 3664 (N.D. Ill. March 20, 1998) (
Bubalo II
), and 
City of Bloomington, Indiana v. Westinghouse Electric Corp.
, 891 F.2d 611 (7th Cir. 1989).  In 
Bubalo II
, a public nuisance action was brought on behalf of two police officers who were shot in the line of duty.  The complaint alleged that the manufacturer's conduct affected public safety and caused the plaintiffs permanent damages by designing and manufacturing the "TEC-DC9" semi-automatic pistol in such a way that it would significantly affect public safety.  The defendant, Navegar, Inc., responded that the district court's finding in favor of the plaintiffs placed "unlimited liability against manufacturers of well-designed, well-made and lawful products for injuries sustained long after the sale of those products."  
Bubalo II
, slip op. at 2.
  Defendants also asserted that Illinois product liability law barred a finding for the plaintiffs.  In addressing defendant's argument that manufacturers of nondefective, legal products could not be liable for public nuisance, the court reviewed the Seventh Circuit's decision in 
City of Bloomington, Indiana v. Westinghouse Electric Corp.
, 891 F.2d 611, 614 (7th Cir. 1989)
, a case in which the court held that there were no allegations to support the notion that defendant company participated in carrying on the nuisance. 
 The 
City of Bloomington
 court cited section 834 of the Restatement (Second) of Torts:  "One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on."  
City of Bloomington
, 891 F.2d at 614 n.5, citing Restatement (Second) of Torts §834 (1977). 

After reviewing 
City of Bloomington
, the 
Bubalo II
 court indicated that 
 if a defendant company had intentionally marketed its product, knowing that its customers would dispose of it in a harmful manner, nothing would preclude liability in those circumstances.  
Bubalo II
, slip op. at 4.  In distinguishing 
City of Bloomington
 from the case before it, the 
Bubalo II
 court noted that plaintiffs made a "serious and disturbing" allegation that the defendants designed and marketed powerful assault weapons targeted to appeal to criminals.  
Bubalo II
, slip op. at 4.  This allegation, if true, suggested a degree of participation not present in 
City of Bloomington
 and "within the meaning of [the] phrase ['to a substantial extent'] in the Restatement §834."  
Bubalo II
, slip op. at 4-5.  As a federal court deciding a case of first impression under Illinois nuisance law, 
Bubalo II
 stated that it was reluctant to impose liability under Illinois law without more guidance or "solid foundation in the state decisional law."  
Bubalo II
, slip op. at 5. Similar to the plaintiffs in 
Bubalo II
, the plaintiffs here allege that defendants designed and marketed weapons to persons who would use them for unlawful purposes.

To support the contention that plaintiffs' second amended complaint does not state a cause of action, defendants cite cases outside of Illinois that have dismissed public nuisance claims against firearm manufacturers and distributors:  
Camden County Board of Chosen Freeholders v. Beretta U.S.A. Corp.
, 123 F. Supp. 2d 245 (D.N.J. 2000) (
Camden I
)
(footnote: 1), aff'd, 273 F.3d 536 (3d Cir. 2001) (
Camden II
)
(footnote: 2); 
City of Philadelphia v. Beretta U.S.A. Corp.
, 126 F. Supp. 2d 882 (E.D. Pa. 2000)
(footnote: 3); 
Ganim v. Smith & Wesson Corp.
, 258 Conn. 313, 780 A.2d 98 (2001)
(footnote: 4); 
City of Gary, Indiana v. Smith & Wesson Corp.
, No. 45 D05-0005-CT-243 (Ind. App. 2002)
(footnote: 5); and 
Ileto v. Glock, Inc.
, 194 F. Supp. 2d 1040 (C.D. Cal. 2002)
(footnote: 6).  However, an analogous and instructive case that permits this type of lawsuit to go beyond the pleading stage on the nuisance issue is 
City of Cincinnati v. Beretta U.S.A. Corp.
, 95 Ohio St. 3d 416, 768 N.E.2d 1136 (2002).  In 
City of Cincinnati
, the city filed a complaint against 15 gun manufacturers, 3 trade associations, and 1 handgun distributor, seeking to hold them responsible under nuisance, negligence, and product liability theories of recovery, for the harm caused by the firearms they manufacture, sell or distribute.  Similar to the instant case, the complaint in 
City of Cincinnati
 asserted that the defendants manufactured, marketed, and distributed their firearms in ways that ensure the widespread accessibility of the firearms to prohibited users, including children and criminals.  The complaint alleged that due to the intentional and negligent conduct of the defendants, they have fostered the criminal misuse of firearms, helped sustain the illegal firearms market in Cincinnati, and created a public nuisance.  
City of Cincinnati
, 95 Ohio St. 3d at 417, 768 N.E.2d at 1140
.  The plaintiff in that case sought both injunctive relief and monetary damages, including reimbursement for expenses such as increased police, emergency, health and corrections costs.  The trial court granted the defendants' motion to dismiss, holding that the complaint failed to state a cause of action, the claims were barred by the doctrine of remoteness, and the plaintiff could not recoup expenditures for public services.  
City of Cincinnati
, 95 Ohio St. 3d at 417, 768 N.E.2d at 1140.
  The court of appeals affirmed on similar grounds.  The Supreme Court of Ohio reversed the court of appeals and remanded the cause to the trial court.  
City of Cincinnati
, 95 Ohio St. 3d at 417, 768 N.E.2d at 1141
.  

In responding to the defendants' contention that Ohio's public nuisance law is limited to actions involving real property or to statutory or regulatory violations involving public health or safety, the Ohio Supreme Court noted that, contrary to defendants' proposition, "there need not be injury to real property in order for there to be a public nuisance."  
City of Cincinnati
, 95 Ohio St. 3d at 419, 768 N.E.2d at 1142
.  "As stated in Comment 
h
 to Section 821B, '[u]nlike a private nuisance, a public nuisance does not necessarily involve interference with use and enjoyment of land.'"  
City of Cincinnati
, 95 Ohio St. 3d at 419, 768 N.E.2d at 1142, 
quoting Restatement (Second) of Torts §821B, Comment
 h
 (1977).  Further, the Ohio Supreme Court noted that "although we have often applied public nuisance law to actions connected to real property or to statutory or regulatory violations involving public health or safety, we have never held that public nuisance law is strictly limited to these types of actions."  
City of Cincinnati
, 95 Ohio St. 3d at 419, 768 N.E.2d at 1142
.

As in the instant case, the defendants in 
City of Cincinnati
 also argued that they could not be held liable for the harm alleged because they did not have control over the alleged nuisance at the time of the injury.  The Ohio Supreme Court responded that it is not fatal to the public nuisance claim that defendants did not control the actual firearms at the moment that harm occurred.  
City of Cincinnati
, 95 Ohio St. 3d at 420, 768 N.E.2d at 1143
.  The Ohio Supreme Court stated:  "[A]ppellant alleged that appellees control the creation and supply of this illegal secondary market for firearms, not the actual use of the firearms that cause injury. *** Just as the individuals who fire the guns are held accountable for the injuries sustained, appellees can be held liable for creating the alleged nuisance."  
City of Cincinnati
, 95 Ohio St. 3d at 420, 768 N.E.2d at 1143
.

C. RESULTING INJURY

Plaintiffs assert that defendants' conduct is the direct and proximate cause of deaths and injuries to Chicago residents and is a significant and unreasonable interference with public safety and health and the public's right to be free from disturbance and reasonable apprehension of danger to person and property.  
Defendants
 
respond
 
that the plaintiffs' claims are too remote to establish a legally sufficient connection between the conduct of any manufacturer or distributor and the alleged resulting harm.  

According to the Restatement, liability for either public or private nuisance arises because one person's acts set in motion a force or chain of events resulting in the invasion or interference.  
Young
, 327 Ill. App. 3d at 970, citing Restatement (Second) of Torts §824, Comment 
b
 (1979).  In our view, plaintiffs' complaint sufficiently pleads facts that, notwithstanding actual knowledge that the guns would be brought into Chicago and used in crimes, the manufacturers, distributors, and dealers failed to alter their actions, thereby creating a public nuisance.  A reasonable trier of fact could find that the criminal misuse of guns to kill persons were occurrences that defendants knew would result or were substantially certain to result from the defendants' alleged conduct here.  See 
Young
, 327 Ill. App. 3d at 970.

Accordingly, based on the specific facts alleged in the second amended complaint with regard to all three classes, manufacturers, distributors, and dealers, we hold that the second amended complaint states a cause of action for public nuisance under Illinois law. 

III. CONSTITUTIONALITY OF PLAINTIFFS' CLAIMS

The defendants raise issues as to the constitutionality of plaintiffs' complaint.  Specifically, defendants assert that the City and County, in violation of the Illinois State Constitution and the United States Constitution, are attempting to regulate interstate commerce through the judicial system.  Plaintiffs reply that they are merely seeking an injunctive remedy for intentional interference with firearm policies and regulations already in place in Illinois and Chicago.  Although the Ohio Supreme Court held that granting such relief would not violate the commerce clause or the due process clause of the United States Constitution (
City of Cincinnati
, 95 Ohio St. 3d at 429, 768 N.E.2d at 1150
), because the trial court in the instant case did not address the constitutionality issue now presented, we decline to address the issue.

IV.  DAMAGES AND REMEDY

Plaintiffs also argue on appeal that where the acts of the defendants create a public nuisance that the municipality seeks to abate, the municipality may recoup its costs.  See 
City of Flagstaff v. Atchinson, Topeka & Santa Fe Ry. Co.
,  719 F.2d 322, 324 (9th Cir. 1983).  In defendants' view, no remedy of any kind may issue against them.  However, we decline to address the issue in the instant case because the trial court did not address the issue of recovery in its grant of defendants' motions to dismiss.

For the foregoing reasons, we conclude that the trial court erred in its dismissal of plaintiffs' second amended complaint.  Accordingly, the decision of the trial court is reversed and the case is remanded for further proceedings.

Reversed and remanded.

McNULTY and TULLY, JJ., concur.

FIRST DIVISION

March 7, 2003

No. 1-00-3541

THE CITY OF CHICAGO and THE COUNTY OF COOK, ) Appeal from the

) Circuit Court

Plaintiffs-Appellants, ) of Cook County

) v. ) 

)

BERETTA U.S.A. CORPORATION; )

PIETRO BERETTA
 Sp. A.; BROWNING ARMS ) 

COMPANY.; BRYCO ARMS INC.;
 )

COLT'S MANUFACTURING COMPANY, )

INC.; DAVIS INDUSTRIES, INC.; GLOCK, )

INC.; GLOCK GMBH; HI-POINT FIREARMS; H&R )

1871, INC.; INTERNATIONAL ARMAMENT ) 

CORPORATION; CARL WALTHER GMBH; ) 

LORCIN ENGINEERING COMPANY, INC; )

KEL-TEC CNC INDUSTRIES, INC.; )

NAVEGAR, INC.; PHOENIX ARMS; RAVEN ARMS, )

INC.; SMITH & WESSON CORPORATION; ) 

STURM, RUGER AND COMPANY, INC; )

SUNDANCE INDUSTRIES, INC.; )

TAURUS INTERNATIONAL MANUFACTURING, )

INC.; FORJAS TAURUS, S.A.; B.L. )

JENNINGS, INC.; FABER BROTHERS, INC.; ) No. 98 CH 015596

RILEY'S, INC.; ABN SPORTS SUPPLY, INC., )

a/k/a ASHLAND SHOOTING SUPPLIES, INC.; )

UNIVERSAL FIREARMS, LTD.; B&H SPORTS, )

LTD.; BREIT & JOHNSON SPORTING GOODS, )

INC.; CHICAGO RIDGE GUN SHOP & RANGE, )

INC.; JOHN RIGGIO, JR.; ELIZABETH )

RIGGIO; JIM RIGGIO; GUN WORLD, INC.; )

MIDWEST SPORTING GOODS COMPANY; THE )

SPORTSMAN'S CENTER/ILLINOIS GUN WORKS, )

LTD.; SHORE GALLERIES, INC.; THE SPORTS )

AUTHORITY, INC.; and DONALD R. BELTRAME, ) The Honorable

) Stephen A. Schiller,

Defendants-Appellees. ) Judge Presiding.

SUPPLEMENTAL OPINION UPON GRANT OF REHEARING

JUSTICE O'MALLEY delivered the supplemental opinion of the court:

In November 1998 the City of Chicago (City) and Cook County (County) filed suit against several firearm manufacturers, firearm distributors and firearm dealers (collectively, defendants) under theories of public nuisance and negligent entrustment.  All defendants, including Sports Authority, responded motions to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2000))
.  In addition to its section 2-615 motion, Sports Authority filed a motion to dismiss pursuant to section 2-619 (735 ILCS 5/2-619 (West 2000)), claiming affirmative matters sufficient to defeat plaintiffs' cause of action.

The trial court's September 15, 2000, order granted all defendants' motions "pursuant to 735 ILCS 5/2-615 and/or 2-619" with prejudice and made the order final and appealable pursuant to Rule 304(a) (155 Ill. 2d R. 304(a)).  Plaintiffs appealed the trial court's ruling dismissing their complaint.

On November 4, 2002, Justice William Cousins, Jr., delivered this court's opinion reversing the trial court's orders of dismissal.  On November 25, 2002, Sports Authority filed a petition for limited rehearing claiming that while this court "extensively analyzed the merits of the defendants' section 2-615 motions," it failed to address the unique issues raised in its section 2-619 motion to dismiss.  We granted Sports Authority's petition for limited rehearing on November 27, 2002.  Justice Cousins retired on December 1, 2002.  

We believe these issues should have been addressed in our original opinion.  The issues were properly before this court since the trial court failed to give a specific basis for its ruling.  This circumstance places before us every issue raised in the motion.  See 
Williams v. Board of Education of the City of Chicago
, 222 Ill. App. 3d 559, 565, 584 N.E.2d 257 (1991).  Therefore, this supplemental opinion addresses only those issues raised in Sports Authority's 2-619 motion.

I. WAIVER

Initially, Sports Authority contends that plaintiffs have waived any arguments in response to its section 2-619 motion by not addressing the issues or rebutting the accompanying affidavits in their opening brief on appeal.  We do not believe there has been a waiver, although it is true that plaintiffs did not specifically address the grant of Sports Authority's section 2-619 motion in their opening brief.  Rather, they combined their response to the grant of defendants' section 2-615 and section 2-619 motions.

To place this in context, in the court below, defendant-dealer Sports Authority filed a combined motion to dismiss plaintiffs' second amended complaint, predicated upon both sections 2-615 and 2-619 of the Code.  Sports Authority's section
 2-619 motion alleged matters that, in its view, would defeat plaintiffs' claims.  The section 2-619 motion was supported by the affidavits of James O'Connor, "Vice President-Loss Prevention," and Thomas Hodek, manager of the Burbank, Illinois, store.  The affidavit of James O'Connor provided: the sales of handguns constituted less than 1% of the company's overall sales; prior to filing the lawsuit, neither the City nor County contacted Sports Authority regarding the claims of illegal sales of firearms and, accordingly, the company believed its sales were lawful; in April 1999, Sports Authority announced that it would discontinue selling handguns; prior to filing the lawsuit, the Bureau of Alcohol, Tobacco and Firearms (ATF) never advised Sports Authority that its sales created a public nuisance or that Sports Authority was negligently selling or entrusting the handguns in Cook County to persons who intended to use them improperly within the City or County; and to his knowledge, no store in the company has ever had its license to sell firearms revoked.  

The affidavit of Thomas Hodek declared: Sports Authority has certain procedures instituted for firearms sales; relative to a handgun sale noted in the complaint, the circumstances around that sale were reported to an ATF agent; there is no requirement that ATF be contacted regarding multiple sales; and relative to another handgun sale noted in the complaint, he believed that the guns were for the purchaser only.

Plaintiffs filed with the trial court
 a combined response to defendants' section
 2-615 motions to dismiss and to Sports Authority's section
 2-619 motion to dismiss.  In their response, plaintiffs maintain that: all of the defendant dealers, including Sports Authority, sell firearms to persons they know are Chicago residents, when they know or reasonably foresee that those firearms will be brought back into Chicago illegally; Sports Authority is allegedly in the small group of dealers disproportionately responsible for supplying firearms to criminals in Chicago; Sports Authority allegedly sold multiple firearms to an "admitted gunrunner" for a street gang; and Sports Authority sold three firearms to undercover police officers "who made it clear that they were engaged in a straw purchase of one of those firearms." 

Plaintiffs further allege that Hodek's affidavit: does not negate the import of the facts alleged in the complaint or the reasonable inferences drawn therefrom; does not explain why it was "nonnegligent to sell firearms to one likely to use them unlawfully if the seller notifies a law enforcement agency of the transaction only after the firearms are out the door"; does not explain why Sports Authority failed to take action to refrain from making sales of firearms that are illegal to possess in Chicago to Chicago residents; and does not explain why his failure to observe "what was going on in plain view was nonnegligent."  Lastly, plaintiffs note that the complaint pleads that Sports Authority "is among the small minority of dealers that knowingly, or at least negligently, exploit the underground market for illegal firearms in Chicago." 

On appeal, plaintiffs' opening brief alleges: the "dealers engage in grossly irresponsible sales practice"; "defendant dealers sell firearms even when they should know that purchasers will use them unlawfully"; the tracing data "demonstrates exactly how each defendant has participated in distribution channels that supply grossly disproportionate numbers of guns to criminals in Chicago"; and the dealers sell firearms when they know or should know that the buyer intends to take a handgun into Chicago or is making an illegal "straw purchase or purchase of multiple weapons on behalf of others." 

In our view, while not specifically identifying the issues raised by Sports Authority in its opening brief, plaintiffs have not waived the issues.  They sufficiently addressed the dismissal based on section 2-619 by realleging that
 the defendant dealers, including Sports Authority, contributed disproportionately to the illegal conduct occurring in Chicago and the County, causing a public nuisance.  Moreover, even if the issues had been waived, in order to reach a just result and to maintain a sound and uniform body of precedent, a reviewing court may sometimes override the considerations of waiver.  
American Federation of State, County & Municipal Employees, Council 31 v. County of Cook
, 145 Ill. 2d 475, 480, 584 N.E.2d 116 (1991).

II. SPORTS AUTHORITY'S SECTION 2-619 MOTION

Sports Authority asserts that even if the plaintiffs have not waived their section
 2-619 challenges, they failed to demonstrate that the trial court erred in granting that motion.   

Section 2-619 states, in pertinent part: 

   "(a) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds ***:

* * *

   (9) That the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim."  735 ILCS 5/2-619(a)(9) (West 2000).

Generally, a section 2-619 motion affords a means to dispose of issues of law or easily proved issues of fact.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 115, 619 N.E.2d 732 (1993), quoting Ill. Ann. Stat., ch. 110, par. 2-619, Historical & Practice Notes, at 662 (Smith-Hurd 1983).  A section 2-619(a)(9) motion to dismiss admits the legal sufficiency of the plaintiff's cause of action much in the same way that a section 2-615 motion to dismiss admits a complaint's well-pleaded facts.  
Kedzie
, 156 Ill. 2d at 115.  Under section 2-619, a motion to dismiss should be granted if, after construing the pleadings and the supporting documents in the light most favorable to the nonmoving party, the trial court finds that no set of facts can be proved upon which relief could be granted.  
Owens v. McDermott, Will & Emery
, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145 (2000).  
An appeal from a dismissal based on section 2-619 is given 
de
 
novo
 review.  
Kedzie
, 156 Ill. 2d at 116.  

In filing its motion to dismiss pursuant to section 2-619, Sports Authority maintains that the claim against it is barred by "affirmative matters" avoiding
 
the legal effect of or defeating the claim.
  
See
 
735 ILCS 5/2-619(a)(9) (West 2000).  The phrase "affirmative matter" in support of a section
 2-619 motion to dismiss encompasses any defense other than a negation of the essential allegations of the plaintiff's cause of action.  
Kedzie
, 156 Ill. 2d at 115.  By submitting adequate affidavits supporting the asserted defense, the defendant satisfies the initial burden of going forward on the motion.  
Kedzie
, 156 Ill. 2d at 116.  If it cannot be determined with reasonable certainty that the alleged defense exists, the motion should not be allowed.  
Consumer Electric Co. v. Cobelcomex, Inc.
, 149 Ill. App. 3d 699, 703, 501 N.E.2d 156 (1986).  "Conclusions of law or conclusions of fact which are unsupported by specific factual allegations are not admitted."  
SBL Associates v. Village of Elk Grove
, 247 Ill. App. 3d 25, 29, 617 N.E.2d 178 (1993).

Relative to Sports Authority's contention contained in the affidavit supporting its section
 2-619 motion that it would discontinue selling handguns, an assertion that "handguns" would no longer be sold does not speak to the sale of other types of firearms, as alleged in the complaint.  Moreover, the mere voluntary cessation of allegedly unlawful conduct cannot moot a case, unless it is absolutely clear the wrongful behavior could not reasonably be expected to recur.  
Fryzel v. Chicago Title & Trust Co.
, 173 Ill. App. 3d 788, 794, 527 N.E.2d 1025 (1988).  The burden is on the defendant to make this showing.  
Cohan v. Citicorp
, 266 Ill. App. 3d 626, 629, 639 N.E.2d 1302 (1993).  In our view, Sports Authority has failed to carry its burden.

With regard to the allegations that gun sales constituted only 1% of its overall sales, this is simply a factual matter that does not defeat plaintiffs' cause of action against Sports Authority but, rather, constitutes evidence that a jury may consider in assessing culpability or degrees of fault, if any.  See 
Watkins v. Schmitt
, 172 Ill. 2d 193, 210, 665 N.E.2d 1379 (1996).  Relative to the affiants' other contentions, in our view, these are factual assertions submitted in contradiction to the complaint.  Evidentiary material in support of a section 2-619 motion may not be submitted for the purpose of contradicting well-pleaded facts in the complaint.  
Provenzale v. Forister
, 318 Ill. App. 3d 869, 879, 743 N.E.2d 676 (2001); 
Anderson v. Anchor Organization for Health Maintenance
, 274 Ill. App. 3d 1001, 1012, 654 N.E.2d 675 (1995).  

When a defendant satisfies the initial burden of going forward on the section 2-619(a)(9) motion to dismiss, the burden then shifts to the plaintiff, who must establish by affidavit or other proof that the affirmative defense asserted either is "unfounded or requires the resolution of an essential element of material fact before it is proven." 
 
Kedzie
, 156 Ill. 2d at 116.  In the instant case, we cannot say that Sports Authority has met the initial burden of demonstrating a defense that would defeat plaintiffs' claim.

Having reviewed the motion and affidavits submitted in support of Sports Authority's section 2-619 motion for dismissal, we hold that the "affirmative matter" provided in the affidavits is factual matters that do not negate the facts alleged in the second amended complaint or the reasonable inferences that can be drawn from those facts.  In our view, Sports Authority was not entitled to judgment as a matter of law under section 2-619 and the trial court erred in its dismissal of plaintiffs' second amended complaint on that basis.  In all other respects, we adhere to our original opinion.

McNULTY and TULLY, JJ., concur.

FOOTNOTES
1:
Camden I
's complaint alleged that the defendants created a criminal market for handguns by implementing marketing and distribution policies that made it easy for criminals to access guns.  
Camden I
, 123 F. Supp. 2d at 266. 

2:
Camden II
 explained that the complaint failed to allege that defendants exercised sufficient control over the source of the interference with the public right, namely, criminals with guns.  
Camden II
, 273 F.3d at 541.

3:
Complaint alleged that marketing scheme was designed to appeal to children; that manufacturers knew distribution channels allowed guns to fall into hands of criminals and youth; and manufacturers knew which dealers engaged in straw purchases but failed to monitor or supervise them.  
City of Philadelphia
, 126 F. Supp. 2d at 888.
 

4:
Supreme Court of Connecticut held that city and mayor lacked standing.  
Ganim
, 258 Conn. at 365, 780 A.2d at 129-30. 

5:
Held that, as to manufacturer appellees, the city failed to allege any legislatively unauthorized activity, and thus, the trial court properly dismissed the city's public nuisance claim.  

6:
Held that plaintiffs failed to allege facts that would support a finding that manufacturer was in control of the nuisance at the time plaintiffs were injured.  
Ileto
, 194 F. Supp. 2d at 1061.