MICHAEL E. FRYZEL, Director of the Department of Financial Institutions, Plaintiff-Appellant, v. CHICAGO TITLE & TRUST COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 87—3210

Opinion filed August 9, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellant.

Concannon, Dillon & Morton, of Chicago (William R. Dillon and John B. Dillon, of counsel), for appellee.

James E. Dahl & Associates, of Chicago (Walter P. Dahl, of counsel), for *amicus curiae* Corporate Fiduciaries Association of Illinois.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

The Director of the Illinois Department of Financial Institutions (DFI) appeals the circuit court's denial of his request for declaratory and other relief to establish his right to examine defendant Chicago Title & Trust Co.'s (CT&T's) records, pursuant to section 23 of the Uniform Disposition of Unclaimed Property Act (Act) (Ill. Rev. Stat. 1983, ch. 141, par. 123). The issues raised for our review include whether: (1) the case is moot because defendant presently is willing to let the Director examine the records at issue; and (2) the Director may inspect records of any person he has reason to believe failed to report property under the Act even when the holder characterizes such property as an active express trust and claims exemption from the Act's reporting requirements. Ill. Rev. Stat. 1983, ch. 141, par. 107a.

CT&T is a trust company doing business in Illinois. In 1980 and 1981, examiners for the Commissioner of Banks & Trusts inspected CT&T's records and reported that its handling of some accounts might be subject to the Act because, among other reasons, a service charge or holding fee was being charged against the unclaimed dividend and abeyant accounts dating back more than seven years. This information was transmitted by the Commissioner's office to the Director in August 1981. On October 14, 1981, the Director notified CT&T that its records, including trust accounts and dividends, would be examined starting November 9, 1981. That letter defined unclaimed property as all CT&T accounts that did not reveal an indication of interest by their owner in the seven previous years.

The Director's examination began on November 9, 1981, but ended on November 12, 1981, when CT&T refused to allow the Director's agents to complete their work. CT&T insists that it fully cooperated with the examination, except in refusing to produce records of confidential trust accounts because they were exempt under the Act and beyond the Director's authority.

Section 23 of the Act provides:

"The Director may at reasonable times and upon reasonable notice examine the records of any person if the Director has reason to believe that such person has failed to report property that should have been reported pursuant to this Act." (Ill. Rev. Stat. 1983, ch. 141, par. 123.)

A "person" under the Act includes any business association or trust. (Ill. Rev. Stat. 1983, ch. 141, par. 101(g).) Business associations must report all property unclaimed in seven years, including stocks, bonds and the interest and dividends accumulated. (Ill. Rev. Stat. 1983, ch. 141, par. 102a.) When a property owner takes no action concerning it for seven years it is presumed abandoned (Ill. Rev. Stat. 1983, ch. 141, pars. 102, 102a, 107, 109) and must be delivered to the Director (Ill. Rev. Stat. 1983, ch. 141, par. 113). Section 7a of the Act, however, states: "The provisions of this Act shall not apply to an active express trust." (Ill. Rev. Stat. 1983, ch. 141, par. 7a.) An active express trust, a term undefined in the Act, is explicated by case law as a trust created expressly by written instrument, or by the direct and positive action of the parties, as shown by writing or by oral communication, or both, in which the trustee has active duties to carry out the trust's purpose. *Price v. State* (1979), 79 Ill. App. 3d 143, 147-48, 398 N.E.2d 365; see *Matthern v. Rankin* (1907), 228 Ill. 318, 323-24, 81 N.E.2d 1024.

A meeting of officials from DFI and CT&T on June 18, 1982, failed to reach agreement concerning the unclaimed property examination. Remarks of the Commissioner's examiner, after an inspection on August 31, 1982, indicated that unclaimed dividend accounts over two years old had been transferred out of the trust department to a reserve account. The examiner expressed concern that the Act might be involved and suggested that written opinions should be obtained from DFI and outside counsel, also noting that management had consulted general and outside counsel and believed itself to be in compliance with the Act. CT&T asserts that subsequent reports in 1984, 1985 and 1986 contained no references to the Act; these reports, however, are not included in the record.

After the Director renewed his request for an examination on October 21, 1982, CT&T's outside counsel provided a written opinion on October 29, 1982, indicating their understanding that the unclaimed dividend account had been transferred to a "reserve for trust division" account, in which unallocated funds provided for payments to third parties or reimbursements to the trusts involved or to CT&T. When CT&T received trust income, any receipts in excess of posted credits were deposited in an "unallocated dividends and interest account," holding funds to be distributed to brokers, paying agents, trusts and CT&T itself. Problems were caused by security sales shortly before dividend dates, accounting errors, and incorrect paying agent or transfer agent records. After such claims were resolved, any funds remaining were placed in the trust division reserve account.

Counsel concluded that CT&T either held all funds in question in active express trusts or received such funds while acting as trustee of active express trusts; accordingly, the Director lacked jurisdiction over these funds under the Act.

On May 8, 1984, the Director filed a verified complaint for declaratory judgment and other appropriate relief, asserting his right under section 23 of the Act to examine records of any person when he had reason to believe property had not been reported pursuant to the Act and that CT&T's refusal to submit to an examination in 1981 or afterwards to determine its compliance violated the Act and prevented the Director from fulfilling his duties. The Director sought a declaration that: CT&T was a banking organization subject to the Act; the Director had the duty and authority to examine, at reasonable times and after reasonable notice, financial institutions, including CT&T, to determine compliance with the Act; and CT&T violated the Act by refusing such an examination. The Director asked for appropriate relief to assure CT&T complied with the Act.

In its verified answer, filed September 20, 1984, CT&T denied it was a banking organization, admitted it was subject to the Act, except for exemptions under the Act, and insisted it fully cooperated with the Director's examination, except for trust property exempt under sections 5, 7 and 7a of the Act. (Ill. Rev. Stat. 1983, ch. 141, pars. 105, 107, 107a.) CT&T asserted it made documentation, minutes and files available to the Director and arranged appointments with its general counsel and chief internal auditor as requested. Maintaining that the Director was not a proper plaintiff in the proceeding and that its trust accounts were subject only to the visitorial rights of the Commissioner (Ill. Rev. Stat. 1983, ch. 17, pars. 1551 through 1570 (repealed effective January 1, 1988, and replaced by Ill. Rev. Stat. 1987, ch. 17, pars. 1551—1 through 1559—5)), CT&T asked for dismissal of the complaint with prejudice and costs.

In October 1984, while the lawsuit was pending, CT&T offered to make the records in question available to the Commissioner's examiners, which was declined.

Both parties filed motions for summary judgment. CT&T attached an affidavit of Charles G. Dalton, its trust department senior vice-president, who averred that: CT&T was audited annually by the Commissioner; individual express trusts constituted the abeyant accounts referred to by the Commissioner's examiner in his 1981 report; documentation on the trusts was proffered to the Commissioner's representatives on or about October 22, 1984, to satisfy them that active express trusts were involved, but the representatives declined making

such a review; the trust accounts were active express trusts; the unclaimed dividends account held dividends received while CT&T was acting as a trustee of active express trusts; and CT&T refused the Director permission to examine the abeyant accounts and unclaimed dividend accounts on advice of outside counsel that the Director lacked jurisdiction based on the Act's exemptions. He further averred that the remarks on the 1981 report were made solely based on the headings of CT&T's financial records and that the trusts in the abeyant accounts were never reviewed by anyone from the Commissioner's office.

The Director filed an affidavit from Michael Goldman, chief examiner for the unclaimed property division of DFI, who averred that he and his staff met with CT&T's officials on November 9, 1981, to discuss the scope of the records examination; however, CT&T indicated no examination of their records would be permitted. The next day, Goldman and his staff discovered unclaimed financial asset items which had already been reported and remitted to DFI by CT&T, but CT&T denied Goldman access to records on which the reports and remittances were based. On November 11, 1981, CT&T again refused DFI access to the records. The Director also filed a memorandum from the Commissioner dated March 28, 1980, stating that, in his opinion, DFI could examine bank records under section 23 of the Act without violating the Illinois Banking Act (Ill. Rev. Stat. 1979, ch. 16½, par. 148 (transferred to Ill. Rev. Stat. 1987, ch. 17, par. 359)).

In opposing plaintiff's motion for summary judgment, CT&T asserted it still held open its alleged previous offer to allow DFI to examine its unclaimed dividend and abeyant accounts so the Director could satisfy himself that those accounts were exempt active express trusts; thus, any claimed right to examine such accounts was moot.

On September 11, 1987, the circuit court entered an order granting summary judgment to CT&T, denying summary judgment to the Director and denying the Director's motion to strike Dalton's affidavit. The circuit court held that section 7a of the Act exempted active express trusts, section 2a did not repeal section 7a and holders of active express trusts who possess property that does not qualify as abandoned are not subject to the Act. The Director appeals.

I

CT&T asserts that it offered and is still willing to permit the Director to review both the unclaimed dividends internal accounts and the abeyant accounts awaiting claims so that the exempt status of such accounts will be clear to the Director; therefore, this matter is

moot.

■ Although a reviewing court will not hear a case merely to decide moot or abstract issues, establish precedent or render a judgment to guide future litigants (*Lotter v. Collagen Corp.* (1983), 115 Ill. App. 3d 696, 699, 450 N.E.2d 1338; *Kohan v. Rimland School for Autistic Children* (1981), 102 Ill. App. 3d 524, 527, 430 N.E.2d 139; see *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 235, 437 N.E.2d 638), mere voluntary cessation of allegedly unlawful conduct cannot moot a case, as defendant would then be free to resume the practices complained of, unless it became absolutely clear that wrongful behavior could not reasonably be expected to recur. *United States v. Concentrated Phosphate Export Association, Inc.* (1968), 393 U.S. 199, 203, 21 L. Ed. 2d 344, 349, 89 S. Ct. 361, 364; see *Kern v. Chicago & Eastern Illinois R.R. Co.* (1961), 31 Ill. App. 2d 300, 304, 175 N.E.2d 408.

■ In the case *sub judice*, CT&T, notwithstanding its offer to allow certain accounts to be examined, continues to insist upon the right to withhold such accounts because active express trusts are involved. Continuing to claim such a right inescapably leaves open the possibility that CT&T may refuse a similar examination in the future. CT&T's voluntary offer, therefore, does not moot this case. (*Amoco Realty Co. v. Montalbano* (1985), 133 Ill. App. 3d 327, 336, 478 N.E.2d 860.) Additionally, this decision could directly impact upon the parties' respective rights and duties. *People ex rel. Bernardi v. City of Highland Park* (1988), 121 Ill. 2d 1, 6-7, 520 N.E.2d 316.

## II

The Director contends that section 23 of the Act grants him investigatory powers that cannot be thwarted by a mere self-serving claim by a property holder of an exemption under section 7a and that he possesses the authority to examine records of property holders to verify the exempt nature of such property. Limiting section 23 by section 7a, he maintains, would encourage holders simply to describe property as an active exempt trust in order to escape compliance with the Act. The Commissioner's information is claimed to have supplied a reasonable basis for the Director's investigation and that it must be inferred that CT&T's holdings were not clearly identifiable as active express trusts.

CT&T relies on the traditional jurisdiction of equity courts over trusts and the exemptions contained in sections 7a and 5 of the Act and concludes that the Director lacks jurisdiction in this matter. CT&T argues that the Director has constantly tried to narrow the

scope of the exemption for active express trusts to increase his own authority. (7 Ill. Reg. 1011 (Jan. 28, 1983); 7 Ill. Reg. 13713–14 (Oct. 14, 1983).) *Amicus curiae,* Corporate Fiduciaries Association of Illinois, opposes what it terms the Director's attempt to secure an unrestricted right to examine and supervise active express trusts. Both CT&T and *amicus curiae* overstate the Director's position, since no power to regulate such trusts is sought by this litigation.

At bar, both parties moved for summary judgment and both filed affidavits. The affidavit relied on by the Director establishes that CT&T refused his representatives access to its records in November 1981 and that his staff discovered unclaimed asset items that previously had been reported and remitted to DFI. The affidavit filed by CT&T lacks facts supporting its affiant's conclusions that the abeyant accounts were active express trust accounts and the unclaimed dividends account contained funds sent CT&T as a trustee of active express trusts. (107 Ill. 2d R. 191(a).) The circuit court did not have before it any documents purporting to be active express trust accounts and made no such adjudication.

The Act clearly applies to CT&T, as the definition of "banking organization" includes a trust company doing business in Illinois and "person" includes business associations and trusts. (Ill. Rev. Stat. 1983, ch. 141, pars. 101(a), (g).) Section 23 of the Act authorizes inspection by the Director if he has reason to believe any person has not reported property reportable under the Act. Under section 5 of the Act, however, its provisions do not apply "to any amount held or owing by a banking organization as agent, or as trustee of an express trust, for the purpose of making payment to holders of, or in respect of stocks, bonds or other securities." Section 7a, as previously stated, exempts active express trusts from application of the Act.

■ In the present case, the exemption of active express trusts from the Act's provisions is plain and unambiguous and must be given its ordinary meaning. (*Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211, 215, 447 N.E.2d 394; see *M.I.G. Investments, Inc. v. Environmental Protection Agency* (1988), 122 Ill. 2d 392, 398, 523 N.E.2d 1.) Equally plain and unambiguous, however, is the Director's authority to examine records when he has reason to believe that property subject to the Act has not been reported. That authority is not limited by any power granted to the Commissioner; CT&T does not cite any statutory provisions granting exclusive authority to examine records to the Commissioner, and no such provision has been found. Neither the recently enacted Corporate Fiduciary Act (Ill. Rev. Stat. 1987, ch. 17, pars. 1551–1 through

1559—5) nor its predecessor (Ill. Rev. Stat. 1983, ch. 17, pars. 1551 through 1570) specifically gives the Commissioner the power to determine whether an active express trust exists or bars the Director from so determining. Indeed, the Commissioner's memorandum of March 28, 1980, asserted that DFI could examine bank records under section 23 of the Act. The Commissioner's examiners further suggested CT&T obtain an opinion from DFI and later refused to look at the documents CT&T proffered concerning unclaimed property, indicating that the examiners were willing to defer to the Director's expertise and right to examine records of financial institutions that are subject to his own authority. Substantial deference must be accorded to interpretations of a statute by an agency charged with its administration. *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152-53, 447 N.E.2d 295.

■ Evidently, CT&T believes that once it has determined for itself that the funds it holds are exempt, that opinion cannot be challenged except by the Commissioner. We decline to read into this legislation a grant to a property holder the unfettered discretion to determine *ipse dixit* whether that property must be reported, or not, when the same legislation gives the Director investigatory powers to examine the circumstances of the property holding. (See *Treasurer & Receiver General v. John Hancock Mutual Life Insurance Co.* (1983), 388 Mass. 410, 420, 446 N.E.2d 1376, 1381-82.) Barring a proper investigation by the Director here would remove a holder of property from the scope of the Act solely on the basis of his own assertions and thereby allow the regulated to become the regulator.

Whether a trust company holds property as a trustee of an active express trust requires an examination of the terms of any existing trust deed. (*Chicago Title & Trust Co. v. Rogers Park Apartments Building Corp.* (1941), 375 Ill. 599, 609, 32 N.E.2d 137.) Such an analysis is a threshold task. Here, we are only concerned with this first step in the process of determining whether the funds in question are covered by or exempt from the Act. Clearly, the legislature has authorized the Director to take that first step by examining records he has reason to believe may involve unclaimed property under the Act which has not been properly reported.

■ CT&T urges that determining the nature of the funds involved is ultimately a question to be decided by a court with equity jurisdiction. (*People ex rel. Daley v. Warren Motors, Inc.* (1985), 136 Ill. App. 3d 505, 511, 483 N.E.2d 427, *aff'd* (1986), 114 Ill. 2d 305.) The Director's section 23 examination does not controvert that judicial authority. Should the Director, after inspection, believe the prop-

erty to be governed by the Act, and the holder thereof disagrees and declines to remit the property to the Director, an action can be brought in the chancery division of the circuit court which, in exercising its chancery powers, can then determine whether there is a viable active express trust. If the court determines that the trust does not fall within the exempt category for whatever reason, it can direct the ultimate disposition of the property, whether to the State or to others. (5 A. Scott, The Law of Trusts §411.4, at 3234, 3235 (3d ed. 1967).) CT&T acknowledges the investigatory authority of the Commissioner, and thereby accepts the right of the State to investigate; it is of no concern to CT&T whether such power is exercised by the Commissioner or the Director, where, as here, both have statutory authority to examine CT&T's records, albeit for different reasons. Recognition of the Director's mere right to ascertain for himself whether the Act should apply, or not, is no limitation upon the trustees, trusts or the statutory exemption.

■ Accordingly, the right of the Director to examine records, at reasonable times and with reasonable notice, when he has reason to believe a holder has failed to report property subject to the Act, even when such property is claimed by the holder thereof to consist solely of active express trusts, is clear. We find that the Director has the power to examine records of the funds in the unclaimed dividends and abeyant accounts, as noted by the Commissioner's office in 1981, and of funds in any successor trust accounts.

From the foregoing analysis, we are compelled to conclude that the decision of the circuit court must be reversed and the cause remanded with directions that the court enter orders authorizing the Director's right to make investigations in accord with the findings set forth in this opinion.

Reversed and remanded with directions.

SCARIANO and EGAN, JJ., concur.