MIRIAM FISCH *et al.*, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs-Appellants, v. LOEWS CINEPLEX THEATRES, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—04—1454

Opinion filed November 4, 2005.—Rehearing denied April 10, 2006.

Mark Weinberg, of Chicago, for appellants.

Mayer, Brown, Rowe & Maw, L.L.P. (Daniel J. Delaney and Joshua D. Yount, of counsel), of Chicago, for appellees.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Plaintiffs Miriam Fisch and Jane Alexander brought this class action suit against defendants Loews Cineplex Theatres, Inc., Loews Theatre Management Corporation, and Lowes Piper's Theatres, Inc. (hereinafter Loews or defendants), alleging violation(s) of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2000)) and the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 2000)). Plaintiffs' third amended class action complaint (complaint) alleges defendants deliberately withheld and suppressed material information regarding the length of the previews shown prior to their movies. The prayer for relief in plaintiffs' complaint seeks an injunction requiring defendants to give viewers reasonable notice of either the true starting times for the feature films or the length of the previews and advertising preceding the feature films. Defendants filed a motion to dismiss plaintiffs' complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2000)). The trial court entered an order granting defendants' motion,

and plaintiffs filed a notice of appeal from that order. Thereafter, defendants filed a motion in this court seeking dismissal of plaintiffs' appeal, contending that events had occurred following the completion of appellate briefing in this case which rendered their appeal moot.

## BACKGROUND

Plaintiffs' complaint alleges defendants deliberately withheld and suppressed material information regarding the length of time of pre-movie content such as commercial advertisements, product promotions, and movie trailers. According to plaintiffs, defendants provided movie times that were intentionally vague and misleading and that forced consumers to arrive at theaters early and become part of an unwitting captive audience that defendants could sell to advertisers.

The prayer for relief in the complaint states in relevant part:

"Plaintiffs *** pray for the following relief:

***

Provide Injunctive Relief to the Plaintiffs' class, ordering [defendants] to give reasonable notice to consumers as to the true starting times for feature films or, in the alternative, give reasonable notice to consumers regarding the length of time of the 'pre-show' movie content so that consumers can make informed choices and decisions as to whether they want to subject themselves to commercial advertisements, promotions, and movie previews prior to the start of feature films. Reasonable notice might consist of Defendants' simply listing the approximate length of time of their pre-movie content in their newspaper advertisements e.g., 'Notice: There will be 15 minutes of "pre-show" entertainment prior to the start of the feature film,' or, in the alternative, notice might consist more fully of Defendants' providing the specific start times of the commercial advertisements, movie previews, and feature films, e.g., 'Advertisements and Promotions from 6:00 to 6:05; previews 6:05 to 6:20; feature film at 6:20.' "

Defendants filed a motion to dismiss plaintiffs' complaint pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 2000)), contending that the complaint failed to state a claim upon which relief could be granted. Following a hearing, the trial court granted the motion to dismiss. On appeal, plaintiffs contend that the trial court failed to apply the plain language of the Consumer Fraud Act (815 ILCS 505/1 et seq. (West 2000)) to the misconduct at issue; that the trial court erred by making factual assumptions beyond the pleadings; that this court's decisions in Covarrubias v. Bancomer, S.A., 351 Ill. App. 3d 737 (2004), and Smith v. Prime Cable of Chicago, 276 Ill. App. 3d 843 (1995), necessitate reversal in the instant case; and that the circuit court wrongfully dismissed the case on an outdated de minimus theory that has no relevance to the Consumer Fraud Act.

Several months after filing their appellate brief, defendants filed a motion in this court, contending that the instant appeal is moot. They explain in the motion that on May 3, 2005 (about six months after the completion of appellate briefing in this case), their parent corporation announced that beginning in Connecticut on May 13, 2005, and then in all other markets within a month, Loews theater movie listings "will note that the feature presentation will start 10 to 15 minutes after the published showtime." Defendants assert in the motion that numerous newspapers, including the Chicago Sun-Times, reported on the announcement, and they have attached samples of such news stories to the motion. Defendants have also attached to their supplemental brief on mootness copies of movie listings from the July 29, 2005, editions of the Chicago Sun-Times, the Chicago Tribune, and the Chicago Daily Herald, each of which includes the printed notation "Feature presentations start 10-15 minutes following published show-times." Defendants maintain that their policy change eliminates entirely the possibility that plaintiffs will suffer any future injury from the complained-of practices.

State Representative Jack Franks (D-Woodstock) in February of 2005 proposed House Bill 1472 requiring theaters in Illinois to list one starting time for when previews and advertisements begin and another starting time for when the movie actually begins. Similar laws have been proposed in Connecticut and New York. As reported in the Chicago Sun-Times on May 3, 2005, Travis Reid, chief executive officer (CEO) for Loews Cineplex Theatres, sent a letter to State Representative Franks indicating that Loews will alert moviegoers that feature presentations start 10 to 15 minutes after published show times. The Sun-Times further reported that State Representative Franks reacted by noting, "This is good business for them, but he was also being responsive to his patrons. It's just the right thing to do." B. Fischer, *When does movie really start? Now You'll Know*," Chicago Sun-Times, May 3, 2005, at 3.

## ANALYSIS

An appeal is considered moot if no actual controversy exists or if events have occurred that make it impossible to grant the complaining party effectual relief. *In re Marriage of Peters-Farrell*, 216 Ill. 2d 287, 291 (2005). Mootness, as a doctrine, stems from the concern that parties to a resolved dispute lack a sufficient personal stake in the outcome to assure that there is an adversarial relationship that sharpens the presentation of issues upon which the courts largely depend for illumination of difficult questions. *Peters-Farrell*, 216 Ill. 2d at 291. An action will be dismissed for mootness once the plaintiff

has secured what was originally sought. *Katherine M. v. Ryder*, 254 Ill. App. 3d 479, 486 (1993). In general, courts will not consider moot or abstract questions or render advisory decisions. *In re Robert S.*, 213 Ill. 2d 30, 45 (2004). Indeed, a court should not resolve an issue simply to establish precedent or to offer guidance for future actions. *People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 198 (1997). However, a defendant's voluntary cessation of allegedly unlawful conduct cannot moot a case unless it is absolutely clear that the defendant's wrongful conduct could not reasonably be expected to recur. *City of Chicago v. Beretta U.S.A. Corp.*, 337 Ill. App. 3d 1, 22 (2002) (supplemental opinion), *rev'd on other grounds*, 213 Ill. 2d 351 (2004). "The burden is on the defendant to make this showing." *Beretta*, 337 Ill. App. 3d at 22.

In the instant case, plaintiffs have secured what they sought in their prayer for relief: reasonable notice of the true starting times of movies shown at theaters operated by defendants. Plaintiffs argue that without a legal injunction, defendants could reverse this policy change at any time and that the case therefore cannot be dismissed as moot. In support of this contention, plaintiffs rely upon *Fryzel v. Chicago Title & Trust Co.*, 173 Ill. App. 3d 788 (1988), and *Cohan v. Citicorp*, 266 Ill. App. 3d 626 (1993). We find plaintiffs' reliance on *Fryzel* and *Cohan* misplaced.

In *Fryzel* and *Cohan* the reviewing courts reviewed whether the defendants opposing imposition of an injunction had satisfied their burden of establishing that the complained-of conduct was not likely to recur. *Cohan*, 266 Ill. App. 3d at 630; *Fryzel*, 173 Ill. App. 3d at 794. The courts in both cases concluded that the defendants had not satisfied this burden based on the defendants' assertion of the right to engage in the complained-of conduct in the future. *Cohan*, 266 Ill. App. 3d at 630; *Fryzel*, 173 Ill. App. 3d at 794.

Unlike the defendants in *Fryzel* and *Cohan*, defendants in the instant case have not asserted, insisted upon, or maintained the right to omit reasonable notice of the actual starting times from their movie listings in the future. Rather, defendants publicly announced that in response to suggestions from customers they were implementing their new practice of disclosing the fact that feature presentations begin 10 to 15 minutes following published show times. Indeed, defendants publicly announced that this practice would be implemented not just in Chicago but across the country. Furthermore, Lowes CEO Travis Reid sent a letter to State Representative Jack Franks notifying him of Loews' implementation of this practice.

In addition to relying upon *Fryzel* and *Cohan*, plaintiffs rely upon *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199,

21 L. Ed. 2d 344, 89 S. Ct. 361 (1968), to support their contention that defendants have not satisfied their burden of establishing their alleged wrongful behavior could not reasonably be expected to recur.

In *Concentrated Phosphate*, the United States government brought an antitrust action against the appellees, alleging that on 11 different occasions they sold and exported concentrated phosphate to the Republic of Korea in violation of antitrust laws. *Concentrated Phosphate*, 339 U.S. at 200-01, 21 L. Ed. 2d at 347, 89 S. Ct. at 362-63. On appeal, the appellees contended that the case had become moot because such transactions had become uneconomical and were not likely to recur. *Concentrated Phosphate*, 339 U.S. at 202-03, 21 L. Ed. 2d at 348, 89 S. Ct. at 363-64. The court rejected this contention, explaining:

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. But here we have only appellees' own statement that it would be uneconomical for them to engage in any further joint operations. Such a statement, standing alone, cannot suffice to satisfy the heavy burden of persuasion which we have held rests upon those in appellees' shoes." *Concentrated Phosphate*, 339 U.S. at 203, 21 L. Ed. 2d at 349, 89 S. Ct. at 364.

We find *Concentrated Phosphate* distinguishable from the case at bar. In *Concentrated Phosphate*, the government sought not an injunction requiring appellees to implement a certain practice on a daily basis but rather an injunction prohibiting them from undertaking a certain type of transaction, namely, the sale and export of concentrated phosphate. The decision in *Concentrated Phosphate* does not indicate that the appellees affirmatively stated that they would not engage in the complained-of transactions. Rather, it reflects only that they stated it would be uneconomical for them to engage in such transactions.

Here, in contrast, plaintiffs do not seek an injunction requiring defendants to refrain from engaging in a certain type of transaction in the future. Rather, plaintiffs seek an order requiring defendants to implement and follow a practice that they are already performing, namely, the providing of reasonable notice of the true start time of their movies. We recognize defendants have not signed a contract promising to continue this practice indefinitely. We note, however, as mentioned above, that defendants publicly announced they have undertaken this practice in response to the suggestions of viewers and that Lowes CEO Travis Reid took the step of sending a letter to State Representative Jack Franks notifying him of this practice. Moreover, defendants have not asserted, insisted upon or maintained the right to omit reasonable notice of the actual starting times from their movies listings in the future. In light of the totality of circumstances, includ-

ing the words and conduct of defendants, we conclude defendants have satisfied their burden of establishing that their alleged wrongful behavior could not reasonably be expected to recur. Were we to address this appeal, we would be doing so only in order to set precedent or to provide guidance for future actions. This would be inappropriate. At this time, we cannot grant plaintiffs any effectual relief because the decision by defendants to disclose to the public the fact that feature presentations will start 10 to 15 minutes after their published show times has resolved the issue on appeal. Therefore, this case is moot.

Plaintiffs argue that we may hear their appeal because it involves a significant public interest. The public interest exception to the mootness doctrine applies only if there is a clear showing that (1) the question is of a substantial public nature; (2) an authoritative determination is needed for future guidance of public officers; and (3) the circumstances are likely to recur. *Peters-Farrell*, 216 Ill. 2d at 292; *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 395 (1994). This exception requires a clear showing of each factor to bring the case within the public interest exception. *Bonaguro*, 158 Ill. 2d at 395. It may be invoked only on rare occasions when there is an extraordinary degree of public interest and concern. *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 783 (1999).

We disagree with plaintiffs that the public interest exception should apply in this case. First, this case involves a private dispute between private parties. Therefore, no question of a "public nature" exists that requires our consideration. See *Mount Carmel High School v. Illinois High School Ass'n*, 279 Ill. App. 3d 122, 126 (1996). We do not dispute that the public may want to know the true starting time of a movie, but we are not convinced that this question rises to the "extraordinary degree of public concern and interest" needed to overcome the mootness doctrine. Moreover, as previously noted, each of the above criteria is required to bring a case within the public interest exception. Even were we to characterize the instant case as generating an extraordinary degree of public concern and interest raising a question of a substantial public nature, we are not persuaded the other two criteria have been satisfied for purposes of applying the public interest exception to the mootness doctrine.

As previously noted, in addition to raising a question of substantial public nature, two other criteria must be satisfied. The likelihood that the circumstances are to recur and the need for future guidance of public officers must be clearly demonstrated for application of the public interest exception to the mootness doctrine. A decision in this case would not guide public officers in the performance of their duties. See *Mount Carmel*, 279 Ill. App. 3d at 126. There are no public officers

who need an authoritative resolution of the question presented in order to perform their duties. The possibility that a decision on the subject might influence courts and legislators does not change that fact. See *Green v. Board of Municipal Employees', Officers' & Officials' Annuity & Benefit Fund*, 309 Ill. App. 3d 757, 766 (1999) (issue not of substantial public interest just because "legislature passed a bill relating to the same subject"); *Lerner v. Lerner*, 84 Ill. App. 3d 721, 723 (1980) (resolving a question to be "helpful to a court" is "not the type of 'guidance of public officials' which warrants discussion of an otherwise moot question").

Finally, as noted above, defendants satisfied their initial burden of establishing that their alleged wrongful behavior could not reasonably be expected to recur. Plaintiffs have not offered evidence which establishes by a clear showing that the circumstances of which they complain are likely to recur in the future. Furthermore, plaintiffs have not established by a clear showing that the case involves a question of a substantial public nature or that an authoritative determination is needed for future guidance of public officers. Accordingly, the public interest exception does not apply.

## CONCLUSION

We note that in plaintiffs' reply memorandum of law against defendants' claims of mootness plaintiffs argue that "the current notice that Loews is running *** is minuscule and easy to miss" and "should instead be set in bold print and should appear in the listing of each individual theater." While we find the current notice satisfies the relief plaintiffs sought by giving reasonable notice to consumers regarding the true starting times for feature films, we note that nothing in this opinion would preclude lawmakers from refining the starting time requirements by, for example, addressing size and placement of such information.

Defendants have adopted new pre-movie, content-presentation practices alerting moviegoers that "Feature presentations start 10-15 minutes following published showtimes." Such notice was the relief plaintiffs sought in the instant case. For the reasons previously discussed, we dismiss the appeal as moot.

Dismissed.

McNULTY, P.J., and FITZGERALD SMITH, J., concur.