2020 IL App (2d) 190345-U
No. 2-19-0345
Order filed February 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CLAUDIA MANLEY and NOEL MANLEY, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 15-MR-582 |
| DR. BRUCE LAW and HINSDALE TOWNSHIP HIGH SCHOOL DISTRICT 86, | ) ) ) ) | Honorable Paul M. Fullerton, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

## ORDER

¶ 1   *Held*:  The trial court did not err in (1) granting summary judgment to defendants when they requested such relief and (2) granting defendants' motion to dismiss as moot where the relief requested by plaintiffs' motion for declaratory judgment would be purely theoretical.

¶ 2   Plaintiffs, Claudia and Noel Manley, appeal from a trial court order granting summary judgment to defendants, Hinsdale Township Highschool District 86 (District) and its then superintendent Dr. Bruce Law (Law) (collectively, defendants), on count I of their amended complaint for declaratory judgment and dismissing count II as moot. Plaintiffs contend that trial

court erred by determining that Claudia was subject to the District's Uniform Grievance Policy (UGP) and urge the court on appeal to reverse the trial court's findings for defendants. We hold that the trial court did not err and affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In the evening of March 12, 2015, plaintiffs arrived at Hinsdale South High School to watch their daughter perform in a play. As they approached the school, plaintiffs saw two individuals, one student and one adult, near the entryway of the school. The individuals were passing out information on three candidates running to fill the open seats on the District's Board of Education in an upcoming election. At that time, Claudia was a member of the board, although not up for reelection. The candidates who the individuals were supporting were of the opposing political faction, and Claudia was "shocked" at the individual's actions. Due to her position on the board's policy committee, she believed that District policy 4:20 did not allow for political campaigning on school property. Both she and Noel stated as much to the individuals during a several minute exchange, during which she expressed to the individuals that she had been "elected to give [her] opinion" on such matters. After the individuals asserted that they had a right to engage in first amendment activities, Claudia reprimanded the student and told her that she should be ashamed of herself for being a "bad friend" to her daughter by campaigning "on the opening night of the senior play." The student was offended by Claudia's behavior and upset to the point of tears. She reported the incident to school officials.

¶ 5      The next night, to curtail any issues, school officials set up two tables for both factions to distribute campaign materials, and the school safety officer remained posted near the entryway. Several individuals, including the student from the night prior, were passing out information at one of the tables when plaintiffs arrived at the school to again watch their daughter in the play.

Plaintiffs took photos on the individuals passing out information but did not speak directly to the group but informed school personnel that the group was violating board policy 4:20.

¶ 6    The March 12 incident was widely shared on social media and other online platforms including a petition to remove Claudia from the board. Law subsequently received several complaints about Claudia's behavior toward the student, including complaints from the student and her parents that Claudia bullied her on March 12 and took photos of her on March 13. To handle the complaints, Law decided to enact the UGP, pursuant to district rule 2:260. The policy provides that students, parents, or community members should notify a complaint manager, designated by the superintendent, "if they believe that the Board of Education, its employees, or agents have violated their rights guaranteed by the State or federal Constitution, State or federal statute, or Board policy" or if they have a complaint regarding an enumerated list of 15 statutes, including one focused on bullying prevention. See 105 ILCS 5/27-23.7 (West 2014). Pursuant to policy 2:260, after receiving a complaint the complaint manager may appoint "a qualified person to undertake the investigation on his or her behalf." Law appointed an independent reviewer, Dr. Jeffrey Litman, to investigate the student's claims.

¶ 7    On April 30, 2015, plaintiffs filed a two-count verified complaint for declaratory judgment, alleging that there had been an ongoing "character assassination" against Claudia because of the District's investigation. Plaintiffs requested that the trial court enter a judgment declaring that (1) policy 2:260 was invalid and unenforceable against Claudia because it failed to protect her "procedural rights" and was inapplicable to her as a "non-employee adult" and (2) policy 4:20 prohibited the individuals' actions on March 12. The same day, plaintiffs also filed a motion for a temporary restraining order requesting that the court prohibit the District from moving forward with the UGP to investigate the March 12 incident, releasing any information to the public about

any investigation in Claudia's behavior, or placing the investigation on the board's agenda. Plaintiffs alleged that unknown persons had "made a mountain out of a molehill" regarding Claudia's interaction with the student on March 12 and that a TRO was necessary to "calm public furor" designed specifically at harassing Claudia.

¶ 8    On May 4, 2015, the trial court denied plaintiffs' TRO motion, finding that plaintiffs failed to establish a certain and clearly ascertainable right needing protection and failed to establish how being subjected to the UGP would constitute intimidation, harassment, bullying, or defamation, as alleged. Continuing, the court noted that, "[b]y virtue of her position as an elected member of the Board, Claudia is a public figure. Members of the public have the right to question her conduct, file complaints against her, and even request her resignation." The court also identified its concern regarding Claudia's conduct in interacting with the student. Finally, the court noted, "[a] board member, simply by being a Board member, does not have any authority to act on behalf of a Board unless authorized or empowered by the Board to act on its behalf. Here [Claudia] took matters into her own hands to enforce Board policy. She has no power to do so ***." The District's investigation into the March 12 incident thus continued. Plaintiffs participated in the process by speaking to Litman and providing him with several documents regarding the incident and names of other witnesses he could contact.

¶ 9    On May 12, 2015, Litman issued his report to the board. Litman's report vindicated Claudia on the allegation that she bullied the student, finding that Claudia's behavior did "not establish a pattern of harassment *** no[r] substantiate a charge of bullying by Mrs. Manley." The report also concluded that "picture taking is not a major issue and should not have been included in any complaints against Mrs. Manley." However, the report did note that Claudia's behavior toward the student on March 12 was "mean spirited and rude" and that she violated board policy 8:30, which

expects "mutual respect, civility, and orderly conduct" by all individuals attending a school event. The report did not suggest or require any punitive measures against Claudia and did not discuss policy 4:20 in any manner. The board adopted Litman's findings on June 9 and subsequently issued a letter to Claudia reprimanding her for her role in the incident but took no other formal action against her. Claudia remained on the board until her term was up and did not seek reelection thereafter.

¶ 10    On July 27, 2015, plaintiffs filed an amended complaint alleging several due process violations occurred when the board enacted the UGP policy and adopted the Litman report findings. The two-count amended complaint again requested declaratory judgments that (count I) board policy 2:260 was inapplicable to Claudia, seemingly adopting the trial court's analysis in denying their motion for TRO that Claudia was not an authorized agent of the board, and (count II) policy 4:20 prohibited the individuals' actions on March 12. In their conclusion, plaintiffs asserted that damages might be awarded to them pursuant to 42 U.S.C. § 1983 (2012).

¶ 11    Plaintiffs filed a motion for partial summary judgment on August 17, 2015, requesting that the court issue summary judgment "limited to Defendants' liability to Plaintiffs' prayer for declaratory judgment *** and deferring further prayers for relief." Before the trial court could rule on plaintiffs' motion, defendants removed the case to federal court.

¶ 12    The parties each filed motions for summary judgment at the federal level. The district court granted defendants' motion on the due process claims, finding that neither plaintiff established that they had been deprived of a protected interest,[1] but declined to address the declaratory judgment

_____

[1] The court went further with respect to Noel, finding that he did not even have standing to bring an action pursuant to 28 U.S.C. § 1983. 15-CV-7499 at 13.

claims. *Manley v. Law*, No. 15-CV-7499 at 12, 15 (ND Ill. Sep. 2, 2016). The Seventh Circuit affirmed, See *Manley v. Law*, No. 16-3846 (7th Cir. May 10, 2018), and the case was remanded back to the trial court in Du Page County.

¶ 13    On September 19, 2018, plaintiffs again filed a motion for partial summary judgment, averring that there are no issues of material fact and requesting that the trial court enter declaratory judgment in their favor for both counts. In the motion, plaintiffs "reserve[d] the right to raise" due process claims in the future, "believ[ing] none of the federal-jurisdictional rulings in federal court have relevance to the rights they assert under the Illinois Due Process Clause."

¶ 14    On September 27, 2018, defendants filed a motion to dismiss the case as moot. With respect to count I, defendants asserted two points. First, it was impossible to grant plaintiffs any requested relief because the UGP was completed over two years prior, and second, because Claudia was no longer on the board, she was no longer subject to the UGP outlined in policy 2:260. With respect to count II, defendants asserted that policy 4:20 was no longer in effect, having been rescinded and replaced on October 16, 2017.

¶ 15    The trial court allowed each side to respond to the opposing motion. Pertinent to this appeal, defendants requested that the trial court enter final judgment in their favor in their response to plaintiffs' motion for summary judgment.

¶ 16    On January 3, 2019, the trial court issued its decision regarding the motions. Plaintiffs' motion for summary judgment on the declaratory actions was denied. Defendants' motion to dismiss the case as moot was granted in part with respect to count II finding that "plaintiffs request for a declaration regarding a non-existing Board Policy that was not relevant to the UGP is moot." However, the court found that count I was not moot, "as [plaintiffs] have not yet been granted or denied the relief sought in their Amended Complaint." The court noted that "[d]efendants request

in their Response *** that final judgment be entered in their favor. There are no material facts in dispute between the parties. Therefore, this Court will treat Defendants' Response as a Cross-Motion for Summary Judgment." In treating the response as a cross-motion, the court granted defendants' prayer for relief and granted summary judgment in their favor with respect to count I:

"Based on a plain reading of District Policy 2:260, Claudia clearly falls within its' confines. While Plaintiffs attempt to characterize the March 2015 incident as a dispute between community members, that is not the case. There is no dispute that at the time of the March 2015 incident, Claudia was a board member of the School District involved in this matter. As a board member, District Policy clearly gives Defendants the right to investigate Claudia's conduct and behavior towards students, parents/guardians, employees and community members. That is exactly what occurred here."

The trial court also found that it did not need to determine whether the individuals passing out information were in violation of any district policy.

¶ 17    Plaintiffs filed a motion to reconsider, which was denied on March 29. Plaintiffs timely filed a notice of appeal on April 29, 2019.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, plaintiffs repeat several of the same arguments that they have been asserting since 2015 and paint Claudia as a victim in a scheme designed by Law and opposing board members to "use [the] governmental process to 'investigate' political adversaries." Having carefully examined the record before us, we have not found evidence of such a nefarious plot and will take plaintiffs' legal arguments in turn.

¶ 20    With respect to count I in their amended complaint, plaintiffs contend that the trial court erred both procedurally and substantively in granting summary judgment to defendants. The

purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists, and, if one does not exist, to determine if the moving party is entitled to judgment as a matter of law. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-3 (2004). Summary judgment is appropriate when the pleadings, depositions, and affidavits show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. Defendants may move at any time for summary judgment in their favor for all or any part of the relief sought against them. *Makela v. State Farm Mutual Auto Insurance Co.*, 147 Ill. App. 3d 38, 50 (1986). We review the judgment of the trial court, not its reasoning, and we may affirm on any grounds in the record. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18. Such review is *de novo*. *Id.*

¶ 21    Turning first to their procedural argument, plaintiffs assert that the trial court erred in granting summary judgment to defendants because defendants did not file a motion for it. Plaintiffs argue that the court, acting "on its own motion," did not have the statutory authority to grant summary judgment. Plaintiffs rely on *Hartford Accident & Indemnity Co. v. Mutual Trucking Co.*, 337 Ill. App. 140 (1949), for the proposition that a trial court's finding in favor of a party without that party filing a motion for summary judgment is "indefensible and must be reversed." 337 Ill. App. at 144. We find *Hartford* inapposite. The "indefensible" summary judgment order in *Hartford* occurred when the trial court ordered two third-party defendants to pay damages directly to the plaintiff, rather than the original defendant who impleaded them. *Id.* At no point did the plaintiff file any claim against the third-party defendants, and the appellate court held that it was "unable to conjecture upon what theory of fact or law [the trial court] entered the summary judgment against [the third-party defendants]." *Id.*

¶ 22    Such is not the case here. The procedural anomaly in *Hartford* requiring the reversal of summary judgment is hardly applicable where no third parties were impleaded and both sides had been parties to the declaratory judgment claims in the amended complaint for several years. Further, we note that the trial court did not grant summary judgment to defendants *sua sponte*, but rather based upon defendants' response, which stated, "This *motion*, together with our renewed motion to dismiss on grounds of mootness, fully addresses all of the remaining causes of actions alleged in this frivolous complaint. We pray that this Court will *enter final judgment* in the Defendants' favor." (Emphasis added.) Section 2-603(c) of the Code of Civil Procedure explicitly provides that pleadings are to be "liberally construed" in order to do "substantial justice between the parties." 735 ILCS 5/2-603(c) (West 2018). To hold, as plaintiffs request, that defendants' response did not qualify as a motion for summary judgment (when plaintiffs *themselves* asked for summary judgment), would elevate form over substance, which we are loath to do. *Avakian v. Chulengarian*, 328 Ill. App. 3d 147, 54 (2002).

¶ 23    Assuming, *arguendo*, that the trial court's granting summary judgment in favor of defendants was in error, we find that it did not prejudice the plaintiffs, as their substantive argument is likewise unavailing (*Infra*, ¶¶ 24-28). See *Patch v. Township of Persifer*, 214 Ill. App. 3d 108, 110 (1991) ("This means that while the plaintiff need not prove her case prior to trial, she is required to present some factual basis that would arguably entitle her to a judgment under applicable Illinois law."). At the end of the day, the parties both agree that there is no issue of material fact and that the trial court could enter judgment as a matter of law on count I. We therefore hold that the trial court did not make a procedural error in granting summary judgment in favor of defendants. See, *e.g.*, *Makela*, 147 Ill. App. 3d at 50 (holding that defendant insurance

company could be granted summary judgment in its favor on a count that was not briefed or argued when only a question of law was presented).

¶ 24    Turning to the substantive issue, plaintiffs raise three arguments in support of their contention that the trial court erred in granting summary judgment to defendants: (1) the District lacked the authority to resolve general disputes between adults on school grounds; (2) the policy had a self-imposed limited applicability, and (3) the District determined that the policy could not be used to resolve private disputes. Each of those arguments relies upon plaintiffs' interpretation that the policy outlines three entities against whom the UGP can be invoked (the board, its employees, or its agents), and Claudia did not fall into any of those categories. Plaintiffs argue that Claudia was acting only as a "community member" when she addressed the individuals on March 12 and such an individual action could not be subjected to the District's UGP, which provides a remedy only for institutional malfeasance. We find such interpretation faulty.

¶ 25    Administrative rules and regulations are construed under the same standards as statutes. *Kean v. Wal-Mart Stores*, 235 Ill. 2d 351, 368 (2009). In construing the meaning of a statute, the primary objective is to ascertain and give effect to the intent of the legislature. *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 375 (2008). The best evidence of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 371 (2007). However, where a plain or literal reading of a statute produces absurd results, the literal reading must yield. *In re Estate of Wilson*, 238 Ill. 2d 519, 560 (2010). Statutory provisions should be read in concert and harmonized. *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25. Statutory interpretation is a question of law, which we review *de novo*. *Ready*, 232 Ill. 2d at 375.

¶ 26 A plain reading of policy 2:260 establishes that when a student believes that the board, a district employee, or an agent of the board has violated their constitutional rights, or have a complaint relating to an enumerated list of statutes, and makes a complaint regarding such behavior, an investigative process will ensue. Nowhere does the policy limit this investigatory procedure to only institutional misfeasance, as plaintiffs allege. In fact, that argument falls flat upon an examination of the enumerated statutes under which a student can make a complaint, which included the bullying prevention statute, 105 ILCS 5/27-23.7 (West 2014), which often is perpetrated by individuals, not institutions.

¶ 27 Plaintiffs next assert that Claudia could not be investigated pursuant to the UGP as she is not the board, its employee, or its agent. Twice the trial court performed a plain language analysis of this policy and found that Claudia could be subjected to the UGP given her position as a board member: first in 2015 when it denied plaintiffs' motion for a TRO and again in 2019 when it granted summary judgment for defendants. We agree with the trial court that Claudia, as a member of the board, could be subject to the UGP as denoted in policy 2:260.

¶ 28 The School Code provides that school districts "shall be governed by a board of education consisting of 7 members ***." 105 ILCS 5/10-10 (West 2018). Plaintiffs assert that this "definition" of board means that Claudia, acting by herself, could not be subject to policy 2:260, essentially arguing that individual board members are not subject to board policies. That is absurd, particularly so given the case at hand. Claudia asserted herself as an authority to the individuals passing out information by stating, "I was elected to give my opinion." Thus, it was not solely her status as a board member that rendered Claudia subject to the UGP, but her status in conjunction with her assertion of that status when interacting with the individuals. Therefore, we find no error in the trial court's granting defendants request for summary judgment.

¶ 29    Plaintiffs also contend that the trial court erred in dismissing count II, in which they sought a declaratory judgment regarding district policy 4:20 which prohibited political advertising on school grounds. Plaintiffs contend that policy 4:20 had a "material impact" on their right to confront the individuals on March 12, rendering the relief they requested in count II live, not moot. Defendants respond that the court correctly dismissed count II because there was no justiciable issue in front of it, given the policy had been rescinded and did not factor at all into the UGP investigation. We agree with defendants.

¶ 30    Courts do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009). Events occurring during the pendency of the litigation that dissipate the controversy may render the case moot. *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 131 Ill. App. 3d. 376, 78 (1985). An appeal is considered moot when no actual controversy exists, or if events have occurred that make it impossible to grant the complaining party effectual relief. *Fisch v. Loews Cineplex Theatres, Inc.*, 365 Ill. App. 3d 537, 39 (2005). A court should not resolve an issue simply to establish precedent or to offer guidance for future actions. *People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 98 (1997). Mootness presents a question of law, which we review *de novo*. *Alfred H.H.*, 233 Ill. 2d at 350.

¶ 31    Here, plaintiffs assert that because the relief they sought (that policy 4:20 was (1) clear without the need to reference any past practices, (2) applicable to the individuals on March 12, 2015, and (3) prohibited their actions) was not granted, their claim was not moot. Plaintiffs' argument must fail. Primarily, it is undisputed that the policy at issue was rescinded and replaced in October 2017, nearly two years before the plaintiffs brought the motion for summary judgment and over three years since the incident at issue. The rescission of the policy at issue in count II

renders any determination of what the policy meant purely theoretical in nature. More importantly, the test for determining mootness is not whether it is possible to grant the relief sought, but rather, whether it is possible to grant *effectual* relief. A determination of the meaning of a rescinded board policy would have no practical effect upon plaintiffs, as it did not factor into the investigation into the claims that Claudia bullied the student. Although plaintiffs assert that policy 4:20 should have been a factor of the UGP investigation, as it would have given Claudia reason to confront the individuals, they conspicuously ignore the fact that Claudia was vindicated in the claims that she bullied the student. As a result, the trial court properly granted defendants' motion to dismiss count II as moot. See *Sharma v. Zollar*, 265 Ill. App. 3d 1022, 1028 (1994) (holding no effectual relief could be granted to a doctor who requested subpoenas after an investigation into his actions found that he did not violate the Medical Practice Act of 1987, rendering his request moot). Noting that plaintiffs do not assert any exception to mootness, we affirm the trial court's determination that count II is moot.

¶ 32    Finally, we briefly address plaintiffs' assertion that the trial court erred in dismissing their complaint in its entirety as they only sought "partial summary judgment" on "liability issues." Plaintiffs aver in their brief and at oral argument that they reserved issues of defendants' violation of the Illinois due process clause when they enacted the UGP to investigate Claudia. Although plaintiffs peppered their amended complaint with suggestions that defendants violated their procedural due process rights, they failed to assert any specific violation as a separate claim, did not seek to file an amended complaint to develop those arguments at the trial court after remand from the federal court, and do not seek to amend their pleadings in front of us. See Illinois Supreme Court Rule 362 (eff. July 1, 2017). Plaintiffs' motion for summary judgment covered both claims

they set forth in their amended complaint, therefore the trial court did not err when it granted a final judgment in favor of defendants.

¶ 33                                    III. CONCLUSION

¶ 34    For the reasons stated, we affirm the trial court's order granting summary judgment on count I and dismissing count II as moot.

¶ 35    Affirmed.